620 F.2d 172
 104 L.R.R.M. (BNA) 2070, 88 Lab.Cas. P 12,002
 CONGRESS OF INDEPENDENT UNIONS, Petitioner,
and
Southern Sun Electric Corporation, Intervenor-Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent,
and
International Brotherhood of Electrical Workers, Local 453,
AFL-CIO, Intervenor-Respondent.
 Nos. 79-1719, 79-1914.
 United States Court of Appeals,
Eighth Circuit.
 Submitted March 12, 1980.
Decided April 11, 1980.
 
 Gary T. Nelms, Jones, Karchmer, Nelms, & Sullivan, Springfield, Mo., for Southern.
 Gerald R. Walters, Hoagland, Maucker, Bernard & Almeter, Alton, Ill., for Congress of Independant Unions.
 Barbara A. Atkin, Atty., N.L.R.B., Washington, D. C., for N.L.R.B., Paul J. Spielberg, Deputy Asst. Gen. Counsel, William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert A. Allen, Acting Associate Gen. Counsel, and Elliott Moore, Deputy Associate Gen. Counsel, Washington, D. C., on the brief.
 Benjamin J. Francka, Springfield, Mo., filed brief for Local Union 453 Intern. Broth. of Elec. Workers.
 Before BRIGHT and ROSS, Circuit Judges, and HANSON, District Judge.*
 ROSS, Circuit Judge.
 
 
 1
 This case comes before us on a petition for a review of a final decision and order of the National Labor Relations Board, pursuant to Section 10(f) of the National Labor Relations Act of 1947, 29 U.S.C. § 160(f).
 
 
 2
 The Congress of Independent Unions (CIU) initiated this action by filing charges against the International Brotherhood of Electrical Workers, Local 453, AFL-CIO (Local 453), for engaging in unlawful recognitional picketing in violation of Section 8(b)(7)(A) of the Act, 29 U.S.C. § 158(b)(7)(A).[1] CIU alleged that Local 453 picketed two of Southern Sun Electric Corporation's (Southern Sun) jobsites with a recognitional objective at a time when the employees of Southern Sun had lawfully recognized CIU as its bargaining representative. The case was tried before Administrative Law Judge James M. Kennedy, who found, in his decision of November 7, 1978, that Local 453 had, in fact, engaged in unlawful recognitional picketing.
 
 
 3
 Local 453 filed exceptions to the decision and a supporting brief, and the General Counsel submitted a brief in support of Judge Kennedy's decision. On June 13, 1979, a three member panel of the Board concluded that the General Counsel had failed to sustain the burden of proving that Local 453's picketing had a recognitional object, and dismissed CIU's complaint. CIU and Southern Sun both filed applications for review of the Board's decision, and the cases have been consolidated for purposes of our review.
 
 
 4
 We have reviewed the opinions of the Administrative Law Judge and the Board, and we have examined the record of this proceeding. We conclude that the circumstances surrounding the picketing in question, as set forth below, do not support the factual and legal inferences drawn from them by the Board. Accordingly, we reverse the Board's dismissal of CIU's complaint.
 
 
 5
 The facts of this case are largely undisputed. The picketing in question followed two years of representation conflicts between the petitioners and Local 453, the respondent. On April 12, 1976, CIU filed a petition for representation of the employees of Southern Sun. Local 453 intervened and won that election, and on May 20, was certified by the Regional Director as the exclusive bargaining representative of Southern Sun's employees. Local 453 was never able to obtain a collective bargaining agreement from Southern Sun, however, and eventually filed charges against the employer for allegedly engaging in unfair labor practices. The charges were dismissed after the Regional Director entered into a unilateral settlement agreement with Southern Sun which was intended to remedy the alleged violations. Local 453 appealed the settlement agreement and the appeal was denied.
 
 
 6
 On December 1, 1977, prior to the close of the certification year, CIU filed a second election petition for representation of Southern Sun's employees. On December 15, Local 453 brought another unfair labor practice charge against Southern Sun, alleging general refusal to bargain. The charge was dismissed by the Regional Director on December 28, and the appeal from that dismissal was denied on January 27, 1978. CIU's petition for an election was granted, and on March 9 the election was held. CIU won the election and Local 453 filed objections. The director overruled the objections on May 11, and also certified CIU as the exclusive bargaining agent for Southern Sun's employees. A collective bargaining agreement between Southern Sun and CIU was subsequently signed, and Local 453's request for review was denied by the Board on June 27. Local 453 claims that its recognitional objective ended at this point or shortly thereafter.
 
 
 7
 On July 10, 1978, less than two weeks after the denial of Local 453's request for review, the picketing commenced. The evidence indicates that the signs were prepared as early as July 5, 1978, and that on July 6, the union's business manager publicly disclaimed its interest in seeking recognition of Southern Sun's employees in a letter to the owner of the first Southern Sun jobsite to be picketed. The letter indicated that the picketing of Southern Sun was solely for the purpose of informing the public that its employees were receiving lower wages and fringe benefits than those achieved by Local 453, and were "working under conditions * * * substandard to those which our union * * * struggled many years to obtain." (Emphasis supplied.)
 
 
 8
 The picketing began at the construction site of a shopping mall in Springfield, Missouri, on which Southern Sun was the electrical subcontractor. The signs displayed the following message:
 
 Notice to Public
 Employees of
 Southern Sun Electric
 
 9
 are doing electrical work on this job, receiving wages, benefits and working conditions that are substandard to that (sic) received by members of Local Union # 453 I.B.E.W. We have no dispute with any other Employer.
 
 
 10
 (Emphasis supplied.) After two days of picketing, Southern Sun's electricians left the job at the request of the owner of the shopping mall, in the face of a pending walkout by the employees of another subcontractor. On the next day, July 12, the business manager of Local 453 sent a letter to the owner of a second Southern Sun project. The text of the letter was identical to that of the first letter of disclaimer. Less than two weeks later, the second site was picketed.
 
 
 11
 The Administrative Law Judge carefully analyzed the history of this dispute and the factual circumstances surrounding the picketing. He found that Local 453's picketing of Southern Sun exhibited a recognitional object, and thus concluded that it violated Section 8(b)(7)(A):
 
 
 12
 All of these facts, it seems to me, compel the conclusion that Respondent had a strong interest in representing Southern Sun's employees beginning in 1976 and continuing until at least July 6 when the first disclaimer was made. That, of course, was only 4 days prior to the commencement of picketing. Indeed, it appears that on July 5, the sign had already been prepared. In this circumstance, it would be naive to conclude that Respondent no longer had a recognitional objective purpose in picketing the Employer. In fact, it defies logic to conclude otherwise. Respondent's "purpose" letters and its use of area standards language here must be deemed simply a pretext, and I so find.
 
 
 13
 Although Judge Kennedy based his decision primarily on the history of the dispute, his conclusion was supported by other evidence of the union's intent: "If there is any doubt about Respondent's purpose after the above observation, it is dispelled by the language of Respondent's picket sign." Such references to "working conditions" have been found by the Board, in the absence of a credible explanation, to exhibit a recognitional object. San Francisco Local Joint Executive Board (McDonald's System of California, Inc.), 203 N.L.R.B. 719, 83 L.R.R.M. 1184, 1185 (1973). And since Judge Kennedy found no credible explanation for the language in the present case, he considered it as evidence of a recognitional objective.
 
 
 14
 In its dismissal of CIU's complaint, the Board focused on the inferences drawn by Judge Kennedy from both the history of the dispute and from the language of the picket signs. The Board first criticized the adverse inference drawn from the brief interval between Local 453's legitimate pursuit of recognition through the methods available to it under the statute, and the subsequent disclaimer of such an intention. Such a presumption, the Board pointed out, not only has been rejected by the Board under similar circumstances, but also would serve to penalize a labor organization for exercising its rights under the Act. Furthermore, the Board found that in the absence of other evidence which might indicate that Local 453's disclaimer of a recognitional object and its area standards objective were pretextual, both must be treated as valid.
 
 
 15
 The Board's second departure from the Administrative Law Judge's analysis is based on the language of the picket signs. In particular, the Board held that a broad interpretation of the language referring to working conditions is unwarranted under the facts of the case, which do not, according to the Board, "support an inference that the language on the picket signs went beyond purely economic concerns." We disagree.
 
 
 16
 We feel that the Board's conclusions are not supported by substantial evidence in the record, when viewed in its entirety. In its first conclusion, the Board found that no adverse inference can be drawn from the brief hiatus between Local 453's engagement in recognitional activities and its disclaimer of such an intention because there was an absence of other evidence in the record which might indicate that the disclaimer was pretextual. And rather than view the evidence as a whole, and treat the language of the picket signs and the letters as other evidence of pretext, the Board next concluded that there was an absence of other evidence in the record which might support such a broad interpretation of the language. We do not believe that the evidence can be separated in this manner.
 
 
 17
 In reviewing a decision of the Board, we are mindful that we are not at liberty merely to substitute our conclusions for those of the Board where there are fairly conflicting views of the evidence. Universal Camera Corp. v. NLRB, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456, 467 (1951). However, we are not barred from setting aside a decision of the Board where it is not supported by substantial evidence in the record.
 
 
 18
 While the Board is permitted to draw inferences from the facts in the record and while we are required to accept such inferences when supported by facts, we are not required to adopt inferences or conclusions that are totally lacking in factual support.
 
 
 19
 National Football League Players Association v. NLRB, 503 F.2d 12, 17 (8th Cir. 1974). Under this standard, it is not enough merely to review that evidence in the record which, standing alone, supports the Board's conclusion. It is clear, rather, that this court's obligation is to review the record in its entirety, for "(t)he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, supra, 340 U.S. at 488, 71 S.Ct. at 464. Therefore, in the present case, the history of the dispute and the language of the picket signs and letters must be considered together in order to determine whether the union's picketing exhibited a recognitional objective.
 
 
 20
 Viewed in this light, we find that the substantiality of the evidence clearly supports the inferences drawn by Judge Kennedy, rather than those drawn by the Board. Local 453's activities, when considered together, exhibit a recognitional objective. In reaching this conclusion, we point out that we do not disagree with the Board's statements concerning the inferences to be drawn solely from the brief hiatus between the denial of Local 453's objections to the March 9, 1978 election and the commencement of its picketing. No adverse inference should arise under those circumstances unless other evidence clearly supports such an inference. In the present case, however, such other evidence clearly exists in the language of the picket signs and the letters to the project owners referring to working conditions.
 
 
 21
 In NLRB v. International Brotherhood of Electrical Workers, Local 265, 604 F.2d 1091, 1097 (8th Cir. 1979), under circumstances clearly analogous to those involved in the present case, this court addressed the issue of proscribed recognitional picketing under Section 8(b)(7)(A), and the exception to that section for "area standards" picketing. In that case, following unsuccessful attempts to represent the employees of a construction company, a labor union sent a letter to the president of the company requesting that "the minimum standards of wages, hours and working conditions" established by the union in that area be observed. (Emphasis supplied.) The union subsequently picketed a jobsite, using signs which referred specifically to the company's working conditions. Under these circumstances, the Board concluded that the union's picketing had a recognitional objective. On review of the Board's decision, the union claimed that it had abandoned its recognitional objective in favor of an area standards objective prior to the picketing, and that the Board's finding of a violation therefore was not supported by substantial evidence.
 
 
 22
 In addressing the union's contentions, this court clearly established that in order for the exception to Section 8(b)(7)(A) to apply, area standards must be the sole purpose of the picketing. We also pointed out that the Board is not bound to accept the self-serving explanations of labor unions as to the object of the picketing in question. See also General Service Employees Union Local 73 v. NLRB, 188 U.S.App.D.C. 119, 578 F.2d 361, 374 (D.C.Cir.1978). Therefore, the court concluded, picketing which seeks to affect matters which are or may be the subjects of a collective bargaining agreement between an employer and a lawfully recognized exclusive bargaining representative may exhibit more than an area standards objective, in spite of the union's protestations to the contrary, and fall within the category of union activity which is proscribed by Section 8(b)(7)(A):
 
 
 23
 Therefore, a recognitional object is established when a union, although purportedly picketing to maintain area standards, undertakes to go beyond a legitimate area standard object and demands that a picketed employer do more than equal the total cost package of its area contracts. For example, to attempt to dictate to the employer the distribution of benefits paid to his employees between wage and fringe benefits establishes a recognitional object under § 8(b)(7). Local Joint Executive Board (Holiday Inns of America, Inc.), 169 NLRB 683, 684, 67 LRRM 1214, 1215 (1968); Retail Clerks Local 899 (State-Mart, Inc.), 166 NLRB 818, 823-24, 65 LRRM 1666, 1667 (1967). In such circumstances the union's conduct is seen as an attempt to engage in pro tanto bargaining to gain benefits for employees it does not represent.
 
 
 24
 NLRB v. International Brotherhood of Electrical Workers, Local 265, supra, 604 F.2d at 1097.
 
 
 25
 Against this background, the court determined that the language of the letter to the employer and the language of the picket signs indicated that the union's activities involved more than an area standards objective. The union's references to working conditions were held to have clearly implied a recognitional and organizational objective:
 
 
 26
 That the Union requests extended well beyond a request to merely comply with area standards is readily apparent when one considers that it requested the Company to maintain "the minimum standards of wages, hours, and working conditions" established by the Union for electricians in the area, and included an offer to furnish the Company with its standard for all three categories mentioned. This language appears to require the Company to adhere not only to area wages and hours, but also to "other working conditions which may or may not be economic in nature and which flow from a collective-bargaining agreement." Local 437, IBEW (Dimeo Construction Co.), 180 NLRB 420, 421 (1969). Indeed, the Board's interpretation of the language of the August 9 letter is buttressed by the language of the picket signs which stated that the Company does not pay Union wages and conditions. This reference imports an object of bringing non-Union conditions to an end by causing the Company to recognize the Union as its employees' representative. This language clearly implies a recognitional and organizational objective.
 
 Id. at 1098. (Emphasis supplied.)
 
 27
 We are guided by this court's analysis in the Electrical Workers case, in concluding that Local 453's letters and picket signs in the present case exhibited a recognitional and organizational objective, and should have been considered as such by the Board. Therefore, we are unable to agree with the Board's conclusion that, aside from the brief hiatus between the denial of Local 453's appeal and the picketing of Southern Sun, there was no other evidence to support the conclusion that Local 453 engaged in recognitional picketing. In viewing the record as a whole, considering both the history of this dispute, and the language of the union's letters and picket signs, we hold that the conclusions reached by the Board are not supported by the substantiality of all the evidence. The evidence clearly supports the Administrative Law Judge's finding that Local 453 engaged in recognitional picketing in violation of Section 8(b)(7)(A), and therefore the Board's dismissal of CIU's complaint must be reversed.
 
 
 28
 We remand this case to the Board with instructions to adopt a remedy consistent with this opinion.
 
 
 
 *
 The Honorable William C. Hanson, Senior United States District Judge for the Southern District of Iowa, sitting by designation
 
 
 [1]
 29 U.S.C. § 158(b)(7)(A) reads as follows:
 (b) It shall be an unfair labor practice for a labor organization or its agents
 (7) to picket or cause to be picketed, or threaten to picket or cause to be picketed, any employer where an object thereof is forcing or requiring an employer to recognize or bargain with a labor organization as the representative of his employees, or forcing or requiring the employees of an employer to accept or select such labor organization as their collective bargaining representative, unless such labor organization is currently certified as the representative of such employees:
 (A) where the employer has lawfully recognized in accordance with this subchapter any other labor organization and a question concerning representation may not appropriately be raised under section 159(c) of this title, * * * .